**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CHARLES MCCLELLAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  13-CV-385-JHP-PJC |
| | ) | |
| CITY OF NOWATA, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Now before the Court is Defendant's Motion for Summary Judgment and Brief in

Support (Dkt. 19).  Defendant has moved for summary judgment on Plaintiff's claims that his

due process rights were violated in connection with his terminations from employment with

Defendant in September 2007 and May 2012.  This Court, having reviewed the evidence on the

record before it, finds no issues of material fact for submission to a jury, and further finds that

Defendant is entitled to judgment as a matter of law.

**I.      FACTUAL BACKGROUND**

Plaintiff Charles McClellan was hired as a police officer for the City of Nowata in

January 2007.  Plaintiff was fired from this position in September 2007.  Shortly thereafter,

Plaintiff requested a review board to appeal his termination, pursuant to 11 O.S. § 50-123.  On

October 23, 2007, Plaintiff submitted a written request for a review board hearing to appeal his

termination, again pursuant to 11 O.S. § 50-123.  However, Plaintiff was not provided a review

board in connection with his 2007 termination at this time.

On December 27, 2010, after over three years had gone by since his termination from

Nowata's Police Department, McClellan submitted another written request for a review board

hearing.  On March 8, 2011, a review board was convened to hear Plaintiff's appeal of his

September 2007 termination. The review board concluded as follows:

> The general consensus was that the termination may have been valid, but was not completed correctly. The paper work does not substantiate the termination. All five [members of the review board] agreed that we should suggest to the current City Manager that Mr. McClellan should be reinstated to the position of Police Officer, his record cleared with the City and CLEET, and his pension be brought up to date as to the City's contribution.

Plaintiff was subsequently rehired as a police officer with the City of Nowata.

In September 2011, the City of Nowata attempted to make good on the recommendation of the March 2011 review board to pay its portion of Plaintiff's pension contributions for the 3.49 year period of time between Plaintiff's termination in September 2007 and his rehiring in March 2011, provided that Plaintiff also make his pension contributions for that same 3.49 year period. Plaintiff refused to execute this agreement to bring his pension contributions current.

On March 13, 2012, Plaintiff met with then-Acting City Manager Lynn Griggs, and demanded a pay increase because of his workload. In response, Griggs gave Plaintiff a pay increase, but advised him that he needed a better rapport with the community, and that he should consider swapping positions with the Assistant Police Chief if he thought his workload was too heavy. A memorandum memorializing the March 13, 2012 meeting, drafted by Griggs, was later presented to Plaintiff on April 16, 2012.

On April 4, 2012, a meeting was held between Plaintiff, police officer Brent Holmes, Mayor Joe Slack, and Lynn Griggs. At this meeting, Officer Holmes' concerns regarding the disorganized condition of Plaintiff's office and Plaintiff's presentation of an inappropriate image to the citizens of the City were discussed. The amount of time Plaintiff spent inappropriately investigating City employees and County officials was discussed. Plaintiff's inappropriate sexual conduct with members of his staff was discussed. Lynn Griggs drafted a memorandum summarizing this meeting, and presented it to Plaintiff on April 16, 2012.

In this memorandum, in addition to the concerns above, Griggs documented that Officer Holmes expressed concerns regarding Plaintiff's harassment of employees. Griggs also documented that she expressed concern that the popular conception in Nowata was that the Police Department was a joke, as a result of the Police Department's officers' apparent inability to work together, coupled with the "ongoing controversy with the Sheriff's" Office. Griggs further documented that she expressed that Plaintiff "had not given proper respect to the position of City Manager," that Plaintiff appeared to have an attitude that he was better than everyone else, and that Plaintiff should hold himself and the Police Department to a higher standard of behavior, such that there should be no "sexual innuendos" or any other behavior that "'smacks' of impropriety." Both Brent Holmes and Joe Slack agreed with Griggs' memorialization of the April 4, 2012 meeting. After receipt of this memorandum, Plaintiff indicated, "I would like a few hours to review and reflect back on the meeting and would like to make a response by the end of the day April 16." Plaintiff did, in fact, prepare a written response to this memorandum and delivered it to Lynn Griggs.

On April 23, 2012, a meeting was held between Plaintiff, then-Mayor Joe Slack, Jim Patton, Lynn Griggs, police officer Matt Smith, DeDe Kerns, Mike Guthrie, and deputy clerk/payroll clerk Shena Guthrie for the purpose of discussing implementation of a CLEET reimbursement policy. Lynn Griggs drafted a memorandum summarizing this meeting, and presented it to Plaintiff on May 3, 2012. In this memorandum, Griggs memorialized that she had expressed during the meeting that she did not appreciate remarks made by Plaintiff that she was "imploding" the Police Department, and it was her view that Plaintiff was the one "imploding" the Police Department. Additionally, Griggs memorialized that Shena Guthrie had asked Plaintiff why some of the officers under his command were getting overtime pay, while others

were not getting a full work week. Griggs added that this was unacceptable in light of the state of the City's budget. Griggs also memorialized that Matt Smith had initially directed his concerns regarding the CLEET policy to Sheena Guthrie. Jim Patton drafted a memorandum summarizing this meeting as well. In this memorandum, Patton observed that Griggs expressed that the remarks made by Plaintiff that she was undermining his authority had generated phone calls from concerned City employees that disrupted a training program Griggs was attending. Patton also observed that Griggs informed Plaintiff that she felt that Plaintiff had not followed the proper chain of command, and that Plaintiff had responded to this by stating that he had not broken the chain of command.

On May 3, 2012, Plaintiff met with Lynn Griggs, and was advised by Griggs that his employment with the City was terminated. Following his termination, Plaintiff requested a review board hearing pursuant to 11 O.S. § 50-123. Plaintiff was provided not one, but two review board hearings in connection with his May 3, 2012 termination. At the initial review board hearing, the review board consisted of Mayor Jim Patton, attorney Bill Maddux, Dr. David Caughell, and police officers Matt Smith and Derrick Boyles. Plaintiff appeared at his initial review board hearing without an attorney, and requested that the hearing be continued to a later date so that he could have his attorney present with him. The board of review granted Plaintiff's request and continued Plaintiff's review board hearing to June 19, 2012. At the second review board hearing held on June 19, 2012, the review board consisted of Mayor Jim Patton, attorney Bill Maddux, Dr. Jeff Gibson, and police officers Matt Smith and Derrick Boyles.

The City of Nowata presented extensive documentation to the board of review as evidence in support of its decision to terminate Plaintiff's employment. The reasons for Plaintiff's termination cited by Griggs in the documentation presented to the review board were:

insubordination; discourteous behavior to the public or other employees; disregard for department or City/rules regulations; incompetence, inefficiency, or neglect of duty; discriminatory harassment; disgraceful conduct that discredits the City; and activity which has been determined to be incompatible with City employment. Plaintiff did not present any documentary evidence to the board of review, nor did he testify at the hearing. Counsel for Plaintiff did, however, challenge the neutrality of the Board. In response to this challenge, then-Mayor Jim Patton polled each member of the Board – Bill Maddux, Jeff Gibson, Matt Smith, Derrick Boyles, and himself – and each one asserted that he was unbiased and would render a decision impartially based on the evidence presented. At the conclusion of the hearing, the Board unanimously voted to affirm the termination of McClellan's employment.

McClellan has filed this lawsuit alleging violation of his due process rights, both for his termination from employment with City of Nowata in September 2007 (Second Cause of Action), and for his termination in May 2012 (First Cause of Action).

## II.    DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate if the pleadings, affidavits, depositions, and evidence on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it is essential to the proper disposition of a claim under controlling law and an issue is genuine if the evidence is such that a rational trier of fact could resolve the issue either way. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Id.* at 255. The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Id.* at 322. If the movant carries its burden, the non-movant must then "set forth specific [admissible] facts," outside of the pleadings, that show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 248. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted).

**B.     Plaintiff's Second Cause of Action – Violation of Due Process Under 42 U.S.C. § 1983 – Is Barred by the Statute of Limitations**

As an initial matter, the Court addresses Plaintiff's *second* cause of action for violation of his due process rights arising from his termination from City employment in September 2007. The Court finds that this cause of action is barred by the statute of limitations, and therefore, Defendant is entitled to summary judgment on this claim.

**1.     Statute of Limitations for § 1983 Claims**

In Oklahoma, the statute of limitations applicable to claims brought under 42 U.S.C. § 1983 is found in 12 O.S. § 95(3), which sets forth that such a claim must be brought within two years of its accrual. *Nunley v. Pioneer Pleasant Vale School Dis. No. 56*, 190 F.Supp.2d 1263 (W.D. Okla. 2002) (*citing Meade v. Grubbs*, 841 F.2d 1512, 1522 (10th Cir. 1988). The 10th Circuit is clear that a § 1983 claim accrues when the plaintiff knew or should have known that his constitutional rights had allegedly been violated. *Hull v. Colorado Bd. of Governors of Colorado State University System*, 805 F.Supp.2d 1094 (D. Colo. 2011) (*citing Parkhurst v. Lampert*, 264 Fed.Appx. 748, 749 (10th Cir. Feb. 12, 2008) *and Beck v. City of Muskogee Police Dept.*, 195 F.3d 553, 557 (10th Cir. 1999).

### 2. Application of Statute of Limitations to Plaintiff's Claim for His September 2007 Discharge

The record in this case is clear that Plaintiff was initially fired from his position as a police officer with the Nowata Police Department in September 2007. Plaintiff did not file his Complaint until June 27, 2013. The record in this case is unclear as to whether Plaintiff was terminated from his employment with City of Nowata on September 7, 2007, or September 17, 2007, but whether the former or the latter is the case is of no consequence. Plaintiff has testified that shortly following his discharge in September 2007, he requested a board of review to appeal his discharge. Therefore, at that very time, he believed his discharge was improper, and any cause of action for alleged deprivation of Plaintiff's due process rights accrued then. Plaintiff's filing of his Complaint was nearly two years too late to maintain a claim for deprivation of due process as a result of his termination from employment with City of Nowata in September 2007.

Even if the Court were to entertain the possibility that despite challenging his discharge in 2007, Plaintiff only became aware of his alleged due process violation when the City refused to provide him a board of review, Plaintiff's cause of action for his September 2007 discharge is still-time barred. The record clearly reflects that in December 2010, Plaintiff wrote a letter indicating his understanding that he had not been provided a review board hearing during the time since his termination in 2007, and he again requested a review board hearing. In light of this correspondence, Plaintiff cannot fairly say that he did not realize that he had not been provided a review board hearing in connection with his 2007 termination. At the very latest, his cause of action for alleged violation his due process rights stemming from his 2007 termination accrued in December 2010, and Plaintiff's claim therefore is still time-barred by the statute of limitations.

### 3.      Continuing Violation Doctrine

Plaintiff has sought to invoke the "continuing violation doctrine" under Title VII of the Civil Rights Act of 1964 to salvage his claim for his September 2007 termination from the statute of limitations.   The essence of Plaintiff's argument is that his claim for alleged violation of his due process rights pertaining to his September 2007 discharge is saved from the statute of limitations because the review board held March 8, 2011 in connection with that discharge recommended that Plaintiff's pension be brought current as to the City's contribution, and that the City has never made such pension contribution payments.   The Court is not persuaded by Plaintiff's argument.

"The continuing violation doctrine permits a Title VII plaintiff to challenge incidents that occurred outside the statutory time limitations of Title VII if such incidents are sufficiently related and thereby constitute a continuing pattern of discrimination."   *Hunt v.* Bennett, 17 F.3d 1263 (10th Cir. 1994).   This is not an employment discrimination case where a pattern or practice of repeated discrimination is alleged.   Plaintiff has cited no case law that supports the contention that the "continuing violation doctrine" discussed in Title VII discrimination jurisprudence also applies to cases alleging due process violation under § 1983.   Indeed, the 10th Circuit has yet to apply the "continuing violation doctrine" to any § 1983 case.   *See, e.g., Mata v. Anderson*, 635 F.3d 1250, 1253 (10th Cir. 2011); *see also Lacour v. Tulsa City-County Jail*, 2012 WL 4483799, *2, No. 11-CV-696-JHP-PJC (N.D. Okla. Sept. 27, 2012) (acknowledging that the continuing violation doctrine has yet to be applied to § 1983 cases in the 10th Circuit).

The Court sees no reason to depart from previous decisions and apply the continuing violation doctrine of Title VII to this case brought pursuant to § 1983.   The record in this case is clear that the City of Nowata specifically attempted to honor the recommendation of the March

2011 review board to pay the City's portion of Plaintiff's pension contributions for the 3.49 year period between his September 2007 discharge and March 2011 rehiring. A letter from the Oklahoma Police Pension & Retirement System dated May 20, 2011 informed both the City of Nowata, and Plaintiff, who was carbon-copied on the letter, that in order to bring Plaintiff's pension current, "all missing employer and employee contributions must be submitted." Plaintiff, during his deposition, did not dispute that he received this memorandum, and could not dispute that this memorandum put him on notice that his portion of his pension contributions would have to be made, in addition to the City's, to bring his pension current. Plaintiff was subsequently presented with a memorandum dated September 12, 2011 in which Defendant attempted to make good on the recommendation of the March 2011 review board to pay the City's portion of Plaintiff's pension contribution for the missing 3.49 year period, but Plaintiff refused to sign off on the memorandum agreement because he felt, contrary to the recommendation of the March 2011 review board, that Defendant should make his portion of the pension contributions as well. Plaintiff cannot fairly claim that Defendant's non-payment of its portion of Plaintiff's pension contributions represented any sort of unlawful act or violation of Plaintiff's due process rights

Plaintiff's claim for alleged violation of his due process rights under 42 U.S.C. § 1983 is barred by the statute of limitations. Accordingly, summary judgment in favor of City of Nowata on Plaintiff's second cause of action is hereby GRANTED.

C. **Plaintiff's First Cause of Action – Violation of Due Process Under 42 U.S.C. § 1983 Fails as a Matter of Law**

Defendant is also entitled to summary judgment on Plaintiff's *first* cause of action for violation of his due process rights arising from his termination from City employment on May 3, 2012. This claim fails as a matter of law because Plaintiff has failed to identify a genuine issue

of material fact with respect to his § 1983 claim for violation of his procedural and/or substantive due process rights.

### 1. Defendant is Entitled to Summary Judgment under the Doctrine of Procedural Due Process

Plaintiff's claim for violation of his procedural due process rights fails as a matter of law. The question of whether Plaintiff was denied procedural due process begins with a two-step inquiry: "(1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Hatfield v. Board of County Com'rs for Converse County*, 52 F.3d 858 (10th Cir. 1995) (citation omitted).

### a. Protected Property Interest

As for the first prong, whether an employee has a protected interest in her continued employment is a question of state law. *Id.* at 863. "The standard for the existence of a property right in employment is whether the plaintiff has a legitimate expectation of continued employment. *Id.* (*citing Board of Regents v. Roth*, 408 U.S. 567, 577 (1972) *and Carnes v. Parker*, 922 F.2d 1506, 1512 n. 2 (10th Cir. 1991)). "[I]f state statutes or regulations place substantive restrictions on a government actor's ability to make personnel decisions, then the employee has a protected property interest. *Id.* (*citing Campbell v. Mercer*, 926 F.2d 990, 993 (10th Cir. 1991).

Here, it is undisputed that Plaintiff, as a police officer, was a member of Oklahoma's Municipal Police Pension and Retirement System. 11 O.S. § 50-123 provides that members Oklahoma's Municipal Police Pension and Retirement System may be terminated only for cause, and are entitled to a board of review to hear appeals from such termination. *In re City of Durant*, 2002 OK 52, 50 P.3d 218, consistent with the case law cited *supra*, recognized that this statute

thus creates a property interest on behalf of a police officer in his employment.  Accordingly, the first prong of the procedural due process analysis is satisfied.

### b.    Plaintiff Was Provided Due Process

Plaintiff cannot, however, satisfy the second prong of the procedural due process analysis, in that he has not demonstrated that the process provided to him was insufficient.

### i.    Pre-termination Process

Plaintiff has argued that his due process rights were violated because he was not provided a pre-termination hearing before an impartial tribunal.  Defendant concedes that Plaintiff was not given a *pre-termination hearing before an impartial decision-maker*, however, due process does not require that Plaintiff be given the opportunity to be heard before an impartial decision maker *prior to his termination* under the circumstances of this case.

The contours of the law outlining the pre-deprivation process required to deprive a public employee of his property interest in his employment were outlined in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  In that case, two former employees of the defendant board of education brought suit against their former employer alleging violation of their due process rights, after they were terminated without being given any advance notice of the reasons behind their terminations, and without any opportunity to respond to said reasons prior to their terminations.  The board of education employees possessed a property interest in their employment conveyed by Ohio statute.  The U.S. Supreme Court, in evaluating whether the plaintiffs had received sufficient process, outlined the process to which these employees were entitled.

The analysis begins with the principle that any deprivation of life, liberty, or property "'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"  *Id.*

at 542 (*quoting Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)) (emphasis added). This principle is derived from the balancing of the private interest of the employee in retaining employment with the governmental interest in the expeditious removal of unsatisfactory employees, avoidance of unnecessary administrative burdens, and the risk of erroneously terminating employees on incorrect facts. *Id.* at 543 (*citing Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). The governmental interest in immediate termination does not outweigh the individual's interests in retaining his livelihood, and as such, "some opportunity for the employee to present his side of the case" prior to termination is necessary to "invoke the discretion of the decisionmaker" at a meaningful time. *Id.* at 543-44 (emphasis added). A "pretermination 'hearing,' though necessary, need not be elaborate." *Id.*at 545. "'The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Id.* (*quoting Boddle v. Connecticut*, 401 U.S. 371, 378 (1971)). The purpose of a pretermination hearing is that it serve as "an initial check against mistaken decisions[.]" *Id.* at 546 (*citing Bell v. Burson*, 402 U.S. 535 (1971)). However, "'something less' than a full evidentiary hearing is sufficient prior to" termination. *Id.* at 545 (*quoting Matthews v. Eldridge*, 424 U.S. at 343)). A "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546 (*citing Arnett v. Kennedy*, 416 U.S. 134, 170-71 (1974)) (emphasis added). "The essential requirements of due process . . . are notice and an opportunity to respond." *Id.* (emphasis added). "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in removing an unsatisfactory employee." *Id.*

The City of Nowata was not required to supplant the authority of its City Manager with

that of a third-party impartial decision maker in order to effect the termination of an employee. Plaintiff cites *Bjorklund v. Miller*, 467 Fed. Appx. 758, No. 11-5037 (10th Cir. Mar. 7, 2012) in support of his contention that that he was entitled to be heard before an impartial decision-maker prior to his termination. The Court does not find Plaintiff's argument and authority persuasive. *Bjorklund* is readily distinguishable from the instant case, as the plaintiff in *Bjorklund* was not afforded any sort of post-termination process whatsoever. *See Id.* Thus, given that the plaintiff in *Bjorklund* had just one opportunity to be afforded due process, the 10th Circuit ruled that under the specific facts of that case, due process required that the plaintiff have an impartial decision-maker at his pre-termination hearing. *Id.* In fact, the 10th Circuit has recognized the principle that due process does not require a neutral decision-maker be present at a pre-termination proceeding where Plaintiff is afforded a hearing before a neutral adjudicator after termination. *Riggins v. Goodman*, 572 F.3d 1101 (10th Cir. 2009) (*citing Locurto v. Safir*, 264 F.3d 154, 173-74 (2nd Cir. 2001)). Thus, under the facts of the instant case, due process does not require that Plaintiff have been afforded a full hearing before a neutral decision-maker prior to his termination.

Plaintiff cannot fairly say that he did not receive notice of the issues with his employment with City of Nowata and an opportunity to respond to those issues prior to his termination. In the record of this case, there is ample evidence illustrating that Plaintiff was on notice that his employer was dissatisfied with his job performance, and that Plaintiff had an opportunity to respond to the issues presented to him. On March 13, 2012, well after Plaintiff had been promoted to Chief of Police, Plaintiff met with Lynn Griggs, the Acting City Manager. At that meeting, Plaintiff complained that he felt that he was not making enough money for the work he believed he was doing. In response, Griggs gave Plaintiff a pay raise, but suggested that he

might wish to swap positions with the Assistant Chief if he felt his position entailed too much work.  Griggs also advised Plaintiff that he needed to establish a better rapport with the community.  An "Occurrence Report" memorializing this meeting was presented to Plaintiff on April 16, 2012.

Later, on April 4, 2012, a meeting was held between Plaintiff, police officer Brent Holmes, Mayor Joe Slack, and Lynn Griggs.  The meeting was held as a result of Officer Holmes accepting a position with the Oologah Police Department.  During this meeting, Officer Holmes explained that the reason he was leaving was Plaintiff.  Officer Holmes cited an extensive list of issues with Plaintiff, which included Plaintiff's harassment of employees, Plaintiff's antagonism of the Sheriff's Office and other County personnel, Plaintiff's inappropriate sexual conduct with employees, and Plaintiff's inability to exude a professional image as Chief of Police.  Plaintiff responded to these allegations not by defending himself, but instead by citing Holmes' missing of Municipal Court dates, and Holmes' taking personal time to meet with the Oologah Police Department when he said he was taking time to take his son to an appointment.  Griggs confronted Plaintiff with some of her own allegations at this meeting as well.  Griggs expressed that the popular conception in the community was that the Nowata Police Department was a joke, due to the inability of the officers to work together and Plaintiff's antagonism of the Sheriff's Office.  Griggs also expressed to Plaintiff that she felt that he was insubordinate to the position of the City Manager, that Plaintiff had an attitude that he was better than everyone, and that she believed Plaintiff should hold himself to a higher standard of behavior, in particular with respect to the allegations of inappropriate sexual conduct.

Plaintiff received a copy of the memorandum prepared by Griggs memorializing this meeting on April 16, 2012.  In the space provided for him to add his comments to the

memorandum, he wrote, "I would like a few hours to review and reflect back on the meeting and would like to make a response by the end of the day April 16." He then signed off on this comment. Plaintiff then prepared a written response to this memorandum, and submitted it to Lynn Griggs later that day on April 16, 2012.

On April 23, 2012, another meeting was held, this time between Plaintiff, Mayor Slack, then-Commissioner Jim Patton, Lynn Griggs, police officer Matt Smith, DeDe Kerns, police officer Mike Guthrie, and payroll clerk Shena Guthrie. The purpose of this meeting originally was to discuss implementation of a policy requiring police officers to stay with the Nowata Police Department for a certain period of time after attending CLEET. However, Plaintiff's job performance came up again as a topic of discussion. Griggs stated that she was upset with the fact that Plaintiff made remarks while she was out of town at a training program that she was undermining his authority and "imploding" the police department, and that his remarks had generated multiple phone calls by concerned City employees that disrupted the training program Griggs was attending. Griggs also alleged that Plaintiff had not followed the proper chain of command. Plaintiff responded that he had not broken the chain of command. Shena Guthrie mentioned that some of the police officers under Plaintiff's command were getting overtime pay, while other officers under Plaintiff's command were not getting a full work week. Griggs advised Plaintiff that this was unacceptable given the state of the City's budget.

On May 3, 2012, Plaintiff met with Lynn Griggs. At this meeting, Griggs presented Plaintiff with the memorandum she had prepared memorializing the April 23, 2012 meeting described above. Griggs then notified Plaintiff that his employment with the City was being terminated.

On these facts, it cannot be said that Plaintiff's procedural due process rights were

violated. As cited above, *Loudermill* provides that the pre-termination process to be afforded an employee is dependent upon the facts and circumstances of the case. The Supreme Court in *Loudermill* held that for the plaintiffs at issue in that case, "all the process that is due is provided by a pre-termination opportunity to respond, coupled with post-termination administrative procedures as provided by . . . statute," which consisted of a "full post-termination hearing." *Id.* at 547-48. In the instant case, on multiple occasions *prior to his termination*, Plaintiff was presented with allegations of his poor job performance, inappropriate conduct, insubordination, and attitude problems. Plaintiff was not terminated until May 3, 2012, and after he was terminated, he was provided a full post-termination hearing as required by 11 O.S. § 50-123. Plaintiff had adequate time to respond to all of the allegations against him *prior to his termination*. In fact, Plaintiff testified that he did respond to the allegations raised against him in the April 4, 2012 meeting, *in writing*. He cannot say that he was not on notice of the allegations against him, nor can he say he had no opportunity to respond to them.

Thus, Plaintiff's claim for violation of his due process rights, as it pertains to his allegations of deficient pre-termination process, fails as a matter of law under the doctrine of procedural due process.

### ii. Post-termination Process

The second substantive allegation of Plaintiff's first cause of action is that he was not provided an adequate post-deprivation board of review hearing pursuant to 11 O.S. § 50-123, in that one or more members of said board of review were biased against him. This contention is not supported by the evidence on record. Plaintiff has not produced sufficient evidence to rebut the presumption of the board's integrity.

"A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course

requires an absence of actual bias in the trial of cases." *In re Murchison*, 349 U.S. 133, 136 (1955); *see also Staton v. Mayes*, 552 F.2d 908, 913 (10th Cir. 1977). To effectively demonstrate bias on the part of an administrative tribunal, the aggrieved party "must overcome a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35 (1975).

> Due process is violated only when ***the risk of unfairness is intolerably high*** under the circumstances of a particular case. Because honesty and integrity are presumed on the part of a tribunal, there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated.

*Mangels v. Pena*, 789 F.2d 836, 838 (10th Cir. 1986) (internal quotations omitted) (emphasis added). "A tribunal is not impartial if it biased with respect to the factual issues to be decided at the hearing." *Miller v. City of Mission*, 705 F.2d 368, 372 (10th Cir. 1983). "The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the board members at a later adversary hearing." *Withrow*, at 421 U.S. at 55.

Plaintiff had two review board hearings related to his May 3, 2012 termination. The members of his first review board hearing were Mayor Jim Patton, attorney Bill Maddux, Dr. David Caughell, and police officers Matt Smith and Derrick Boyles. Plaintiff requested a continuance of his hearing, because he was unable to secure the presence of his attorney. The board granted Plaintiff's request, and continued the hearing to June 19, 2012.

The review board in attendance at Plaintiff's *second* review board hearing consisted of Mayor Jim Patton, attorney Bill Maddux, Dr. Jeff Gibson, and police officers Matt Smith and Derrick Boyles. At the outset of this review board hearing, Plaintiff's attorney accused the board of review convened to hear the appeal of Plaintiff's discharge of bias. In response, Mayor Jim Patton polled each member of the board, including himself, and each member stated that he was

not biased. Plaintiff offered no testimony regarding the merits of his termination, nor did Plaintiff present any evidence rebutting the overwhelming evidence presented by the City of Nowata justifying his termination.[1] In so doing, Plaintiff deprived the board of review an opportunity to hear his appeal of the merits of his discharge. The board, therefore, had no valid grounds upon which it could have overturned the City's decision to terminate Plaintiff, irrespective of any alleged bias. Therefore, Plaintiff cannot fairly claim that the Board was biased with respect to any of the "factual issues to be decided at the hearing," as required by *Miller*, *supra*, when Plaintiff, by his own choice not to present documentary evidence or testify regarding the merits of his termination, left no factual issues to be decided at his board of review hearing. Plaintiff knowingly failed to take advantage of the process afforded him, and has thus waived his right to challenge the hearing provided to him by filing suit in court. *Pitts v. Board of Educ. of U.S.D. 305, Salina, Kansas*, 869 F.2d 555 (10th Cir. 1989) (emphasis added). On this point alone, Defendant is entitled to summary judgment on Plaintiff's first cause of action with respect to the post-termination process provided to him.

Notwithstanding Plaintiff's failure to challenge the evidence presented by the City at his review board hearing, the evidence on record in this case also does not illustrate that any of the members of Plaintiff's board of review were biased such that a reasonable jury could find that the risk of unfairness to Plaintiff was intolerably high, as required by *Mangels*, cited *supra*.

---

[1] It is clear from Plaintiff's deposition transcript that he does not recall producing any documentary evidence to the review board convened in connection with his May 3, 2012 discharge, and if he had presented any documents at the hearing, they would have simply consisted of the documents that the City had already produced to him. To the extent Plaintiff has attempted to create a disputed fact by averring that he presented documentary evidence at his review board hearing via his affidavit, the Court disregards Plaintiff's affidavit as a self-serving sham affidavit that creates a false factual dispute. *See Franks v. Nimmo*, 796 F.2d 1230 (10th Cir. 1986) (rejecting plaintiff's affidavit, which contradicted plaintiff's unequivocal deposition testimony, and was drafted after plaintiff's deposition, as creating a sham factual dispute); *see also Seeber v. Williams Companies, Inc.*, 2006 WL 2524249, No. 04-CV-0451-CVE-PJC (N.D. Okla. Aug. 28, 2006).

Each member is addressed below, in turn.

- **Jim Patton**

Plaintiff has alleged that Jim Patton was biased against Plaintiff because he sat in on, and actively participated in, the meeting held April 4, 2012, in which Plaintiff's failings as Chief of Police were discussed. However, the record does not support the allegation that Jim Patton sat in on the April 4, 2012 meeting. It is true that Jim Patton, as a City Commissioner, sat in on the subsequent April 23, 2012 meeting, and took notes regarding that meeting. However, Patton did not advance any evidence himself, nor did he preside over that meeting in any sort of adjudicatory capacity. There simply is no evidence that Patton was biased against Plaintiff as a result of his attendance at the April 23, 2012 meeting. To the contrary, Patton has sworn under oath that he was not biased against Plaintiff at his review board hearing.[2]

- **Matt Smith**

Plaintiff has alleged Matt Smith was biased against Plaintiff because he participated in the April 23, 2012 meeting concerning the City's CLEET reimbursement policy, was upset with the policy, and somehow blamed the policy on Plaintiff. Plaintiff has also testified that he thought Matt Smith was angry at him regarding the enactment of the City's CLEET reimbursement policy. It is true that Matt Smith sat in on the April 23, 2012 meeting, in which the City's CLEET reimbursement policy was discussed. However, whether Plaintiff or Griggs was the driving force behind creation of the policy was not a factual issue to be decided at Plaintiff's review board hearing. Instead, at issue was Plaintiff's insubordination to the authority of the City Manager. Moreover, Plaintiff's assertion that Smith believed Plaintiff to be behind the CLEET reimbursement policy is contradicted by the record of the meeting on April 23, 2012.

---

[2] Patton, as the sitting Mayor at the time of Plaintiff's review board hearing, was required by 11 O.S. § 50-123 to sit on Plaintiff's review board.

The record of that meeting reflects Smith had originally raised issues he and other officers may have had with the policy directly to City Hall by calling Sheena Guthrie.  At the meeting, Griggs had to advise Smith to observe the chain of command, in that if the officers had issues with the CLEET policy that they wanted to take up with City Hall, they had to go through Plaintiff, as the Police Chief.  As with Patton, Matt Smith has sworn under oath that he was not biased against Plaintiff at his review board hearing.

- **Dr. Jeff Gibson**

Plaintiff has alleged that Dr. Jeff Gibson was biased against Plaintiff because his brother is Associate District Judge Carl Gibson, whom Plaintiff had tried to have arrested via submission of a probable cause affidavit to the District Attorney.  It is true that Dr. Jeff Gibson is the brother of Associate District Carl Gibson.  It is also true that Plaintiff tried to have Judge Gibson arrested, and that the District Attorney declined to pursue Plaintiff's charges against Judge Gibson because Plaintiff was operating under a clear misunderstanding of the law.  However, Plaintiff has adduced no evidence that Dr. Gibson (1) was aware of Plaintiff's attempt to have Judge Gibson arrested, or (2) that such awareness would prejudice Dr. Gibson in his evaluation of the evidence presented to the review board.  Dr. Jeff Gibson has sworn under oath that he was not biased against Plaintiff at his review board hearing, and further, that he was not aware that Plaintiff had attempted to have Dr. Gibson's brother, Associate District Judge Carl Gibson, arrested.

- **Derrick Boyles**

Plaintiff has alleged that Derrick Boyles was biased against Plaintiff because Plaintiff was actually the driving force behind Boyles' prior discharge from employment with Nowata's Police Department.  Plaintiff supplemented these allegations by testifying that he had initiated

the report that eventually led to Boyles' discharge, and had recommended Boyles' termination. It is true that Derrick Boyles refused to arrest a man for allegedly discharging a firearm in public. It is also true that Derrick Boyles was terminated from his employment with the Nowata Police Department as a result of this incident on October 14, 2011. However, Plaintiff cannot support the allegation that Boyles was aware of Plaintiff's role in his discharge and was therefore biased against Plaintiff. Moreover, Boyles' discharge had nothing to do with the reasons behind Plaintiff's termination. Plaintiff cannot prove that Boyles was aware of what may or may not have been said behind closed doors in connection with his discharge. Derrick Boyles has sworn under oath that he was unaware that Plaintiff conducted the investigation leading to Boyles' October 2011 termination. Derrick Boyles also testified under oath that he had never seen the document in which District Attorney Kevin Buchanan declined to pursue a warrant for Boyles' arrest, specifically at the request of Plaintiff. Further, Derrick Boyles testified under oath that despite having been previously made aware by Sheriff Hallett that the Police Department had filed a warrant for his arrest subsequent to his discharge, he asserted that he was not biased against Plaintiff at his review board hearing.

- **Bill Maddux**

Plaintiff, in his deposition, in contradiction to the allegations previously set forth in his Complaint and discovery responses, added that he also felt Bill Maddux was biased against him, because Plaintiff and Maddux had a conflict over the Open Meetings Act while Plaintiff was serving as a City Commissioner. Plaintiff's allegation that Bill Maddux was somehow biased against him is not relevant because it is not connected in any way with Plaintiff's tenure as a police officer. Bill Maddux's assertion at the review board hearing indicates that he was not

biased against Plaintiff.[3]

Thus, for each of individuals against whom Plaintiff has alleged bias, Plaintiff would be asking a jury to set aside each witness' own sworn testimony, and speculate that they were biased, despite their testimony to the contrary. Summary judgment is a vehicle designed to prevent just that. *See, e.g. Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928, 929 (7th Cir. 1995) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.").

Plaintiff has adduced no evidence to rebut the presumption of integrity in the board of review that was provided to him on July 19, 2012 such that a reasonable jury could determine that the risk of unfairness to Plaintiff was intolerably high. Because Plaintiff cannot rebut the presumption of integrity afforded his board of review, and because he did not take advantage of the hearing he was provided to appeal the grounds of his discharge, Defendant is entitled to summary judgment on Plaintiff's second cause of action as it relates to his allegations that he received deficient post-termination process.

### 2. Defendant is Entitled to Summary Judgment under the Doctrine of Substantive Due Process

#### a. Fundamental Interest

According to the Tenth Circuit, even if an employee has a protected interest in continued employment, he is not necessarily protected by the doctrine of substantive due process. *Potts v. Davis County,* 551 F.3d 1188, 1193 n. 1 (10th Cir. 2009) (citing *Hennigh v. City of Shawnee,* 155 F.3d 1249, 1257 (10th Cir.1998)). "We note that our circuit precedent does not clearly delineate what specific property interests in employment are fundamental, and thus protected by the doctrine of substantive due process." *Houston v. Indep. Sch. Dist. No. 89 of Oklahoma Cnty.,*

---

[3] In Plaintiff's Response to Defendant's Motion for Summary Judgment, Plaintiff does not argue that Bill Maddux was biased against him.

CIV-08-374-D, 2010 WL 988414 (W.D. Okla. Mar. 12, 2010) (citing *Potts,* 551 F.3d at 1193 n. 1). However, generally speaking, fundamental interests accorded substantive due process protection are generally those related to "marriage, family, procreation, and the right to bodily integrity," rather than to employment. *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008). Moreover, a fundamental interest cannot be infringed upon at all, regardless of the process afforded, unless the infringement is narrowly tailored to serve a compelling state interest. *Reno v. Flores*, 507 U.S. 292, 301-02 (1993). The property interest in continued employment created by 11 O.S § 50-123 is no such fundamental interest. As such, Defendant is entitled to summary judgment on Plaintiff's first cause of action under the doctrine of substantive due process because no fundamental interest is at stake here.

### b.     Conduct That "Shocks the Conscience"

Even if Plaintiff could establish a fundamental interest in his continued employment, he would have to show that Defendant engaged in "egregious conduct" constituting an "abuse of power" that "shocks the conscience" to maintain a cause of action under the doctrine of substantive due process. *Houston v. Indep. Sch. Dist. No. 89 of Oklahoma Cnty.*, CIV-08-374-D, 2010 WL 988414 (W.D. Okla. Mar. 12, 2010) (citing *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir.2008)). Here, Plaintiff cannot do that, and summary judgment in favor of Defendant is appropriate.

In *Williams*, the Court stated:

> Substantive due process arises from the Fourteenth Amendment's protections against governmental deprivations "without due process of law." Under this framework, due process protections are accorded primarily "to matters relating to marriage, family, procreation, and the right to bodily integrity." And, moreover, in extending these concepts to further bar "certain government actions regardless of the fairness of the procedures used to implement them," the Supreme Court has emphasized "that only the most egregious official conduct can be said to be arbitrary in the constitutional sense."

*Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008) (citiations omitted). Moreover, "substantive due process protections extend only to 'deliberately wrongful government decisions rather than merely negligent government conduct.'" *Ward v. Anderson*, 494 F.3d 929, 938 (10th Cir.2007) (quoting *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir.1995)). "The 'ultimate standard' for assessing an alleged violation of substantive due process is 'whether the challenged government action shocks the conscience of federal judges.'" *Id.* at 937 (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir.2006)) (emphasis added). "This standard is not an easy one for a plaintiff to satisfy." *Id.* As the Circuit explained:

> It is well settled that negligence is not sufficient to shock the conscience. In addition, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. The plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking. This is a high level of outrageousness.

*Ward*, 494 F.3d at 937–38 (citing *Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1222–23 (10th Cir.2006)).

Here, Plaintiff cannot meet this burden with respect to his discharge from employment with the City. His termination from employment was accompanied by extensive documentation setting forth the reasons for his discharge. As such, the City's termination of Plaintiff's employment was far from arbitrary, let alone conduct that shocks the conscience.

Accordingly, Defendant is also entitled to summary judgment on Plaintiff's first cause of action under the doctrine of substantive due process.

### D.    Failure to Follow a Progressive Discipline Policy Does Not Mandate Reversal of Plaintiff's Discharge

In his Response to Defendant's Motion for Summary Judgment, Plaintiff alleges and advances an entirely new claim in this case not put forth in either his Complaint (Dkt. 2) or his

portion of the Joint Status Report (Dkt. 9) – Plaintiff alleges in his Response that Defendant failed to file its very own progressive discipline policy, and, therefore, Plaintiff's termination should be reversed.

The Court need not even consider Plaintiff's brand-new state law claim. "A plaintiff may not assert new allegations at the summary judgment stage if such allegations amount to a "fundamental change" in the nature of plaintiff's claims. *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1297 (11th Cir.2006) (plaintiff could not expand his FMLA allegations in response to defendant's motion for summary judgment because the new allegations amounted to a "fundamental change" in the nature of plaintiff's claim); *see also Sharp v. Rosa Mexicano, D. C., L.L.C.*, 496 F.Supp.2d 93, 97 n. 3 (D.D.C.2007) (stating that plaintiff may not, "through summary judgment briefs, raise [ ] new claims ... because plaintiff did not raise them in his complaint, and did not file an amended complaint"). Here, Plaintiff attempts to make just such a fundamental change. In addition to his previously-pleaded claims brought pursuant to 42 U.S.C. § 1983 for alleged violation of his due process rights under the Fourteenth Amendment of the U.S. Constitution, Plaintiff also apparently desires to add a state law claim for alleged failure of Defendant to adhere to its discretionary progressive discipline policy.[4] This Plaintiff cannot do.

Even if the Court desires to entertain this new cause of action at this late stage, the progressive discipline policy at question is not mandatory. The very policy provides as much:

> This Section on employee discipline and dismissals has been prepared as
> guidance for the department heads and the City Manager. It describes the general

---

[4] Any violation of the City's discretionary progressive discipline policy would not, in any event, tend to establish violation of Plaintiff's due process rights under § 1983. *See Mangels v. Pena¸* 789 F.2d 836, 838 (10th Cir. 1986) ("A failure to comply with state or local procedural requirements does not necessarily constitute a denial of due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause.").

guidelines of the City concerning discipline and termination decisions. Each case will need to be evaluated on an individual basis. <u>All employees must remember that employment can be terminated with or without cause or notice, at any time by the employee or the City of Nowata</u>.

[Doc. 19-3 & Doc. 20, D.124-D.128, City of Nowata Personnel Manual, Article VII, Discipline – Termination, Section 7-1(A) (emphasis original)]. Additionally, the policy provides:

Dismissal may result with or without cause or notice. Dismissal may result when no improvement has been made after previous steps or progressive discipline have been applied or because of the seriousness of the offense. <u>Dismissal may also be used with or without cause, or simply for the good of the service, at the discretion of the City Manager.</u>

[*Id.*, Section 7-1(D)(6) (emphasis added)].

Plaintiff has cited two cases to support his position, and both are easily distinguishable and inapplicable. In *Anderson v. City of Lawton*, 1987 OK CIV APP 91, 748 P.2d 53, the progressive discipline policy at issue was required to be followed pursuant to a collective bargaining agreement. *Id.* at 54-55. In *Breshears v. Moore*, 1990 OK CIV APP 8, 792 P.2d 91, the court had specifically found that the personnel policies and procedures at issue imposed a mandatory duty on the employer to follow those policies and procedures. *Id.* at 93. Thus, neither case applies to the dispute at bar, where there is no collective bargaining agreement, and where the policies and procedures relied upon by Plaintiff, by their very terms, are meant solely as guidance, with dismissal of employees left to the discretion of the City Manager, with or without notice.

Accordingly, Defendant is also entitled to summary judgment on Plaintiff's untimely-introduced state law claim for failure to follow its progressive discipline policy.

## IV.    CONCLUSION

Therefore, there are no issues of material fact for a jury to decide and Defendant is entitled to judgment as a matter of law.  Defendant City of Nowata's Motion for Summary Judgment (Dkt. 19) IS HEREBY GRANTED.

James H. Payne
United States District Judge
Northern District of Oklahoma